DECISION
This matter is before the Court on a complaint for trespass filed by plaintiff, First Mendon Associates, L.L.C. (hereinafter "First Mendon") against defendant James R. Dumas (hereinafter "Dumas") who counterclaims seeking title to the land in question by adverse possession. After a three day non-jury trial in which certain facts were stipulated to (See Exhibit A attached hereto and incorporated by reference), the parties submitted post trial briefs in support of their respective positions.
 FACTS
On March 11, 1998 First Mendon purchased a 7.2 acre parcel of land designated as Assessor's Plat 51, Lot 1 in Woonsocket, Rhode Island. At some point First Mendon gave notice to Dumas that he was a trespasser on 34,413 square feet of this lot (herein designated as the "disputed property" and further set forth on plaintiff's Exhibits 1 and 1A "the Nyberg Site Plan".) After First Mendon filed a complaint in this Court for trespass, Dumas counterclaimed seeking title to the disputed property by adverse possession. During the trial Dumas testified that his father had owned the house on Assessor's Plat 51, Lot 10, which is adjacent to the disputed property since the 1960's and that he bought it from him in 1986. During this period, first his father and then he, used the disputed property for various purposes without ever getting permission from its owners. The types of use engaged in were essentially found in three portions of the disputed property. (1) The area closest to the Dumas house on which a pool, plantings and a stone wall were placed; (2) a gravel drive that ran from a paved drive off Mendon Road adjacent to, and east of, the first areas which Dumas, and before him his father, used and maintained for egress and the parking of vehicles; and (3) a wooded area east of the gravel drive used for the storage of vehicles and wood, a garden, and for the placement of such items as a tree house, birdbath and feeder. Additionally, over the years Dumas, without permission, cut paths through this area.
First Mendon, in asserting its trespass claim and defending against the adverse possession counterclaim, sought to show (1) that Dumas had been given permission to use the land sometime in the mid 1980's; (2) that by not going forward with an earlier planned adverse possession action in 1988 he abandoned further claims by this method; (3) that because others used the gravel drive and wooded area, Dumas could not prove his exclusive use of the property; and (4) that many of the uses were for less than the ten year statutory period for adverse possession or so insignificant they did not meet the requirement of open and notorious use. In pressing its trespass claim, First Mendon presented evidence that Dumas was a trespasser on the disputed property at least since its purchase in 1998, and should be removed from it and that it should be awarded damages based on the fair market rental value of the land during this period.
 ARGUMENTS MADE
Both parties agree that the burdens of proof differ with regard to their respective claims. While First Mendon`s trespass action must be proven by a fair preponderance of the evidence, Dumas' adverse possession counterclaim must be shown by the higher standard of clear and convincing evidence. Both sides set forth the law on adverse possession including the statutory requirement that a claimant must establish that his possession of the property in question has been actual, open, notorious, hostile, under claim of right, continuous and exclusive for the space of ten years. R.I.G.L. § 34-7-1, 1956 as amended; Locke v. O'Brien,610 A.2d 552, (1992), Walsh v. Cappuccio, 602 A.2d 927 (1992). For a more recent discussion of the law of adverse possession see Tavares v. Beck,
R.I. Supreme Court 2001-541 (Jan. 29, 2003) and Santurri v. DiPietro,
R.I. Supreme Court 2001 — 188 (Mar. 7, 2003).
Dumas, through his testimony, and that of his brother and cousin, along with the use of numerous photographs, maps and a video sought to show that since the time his father bought his house and its 6,109 square foot lot on Mendon Road, the family had openly used the disputed property in a manner meeting all the criteria for a taking by adverse possession. He points to the pool[1] which has been located in the same location on the disputed property for over 30 years. He cites the plantings and walls (first wood, then stone) around them. Next he shows how the family had developed and used the gravel drive off Mendon Road. Dumas presented a bill for gravel that he spread over it; and, he testified to its maintenance and use for egress and the parking of his many vehicles. Finally, Dumas refers to his use of the wooded area as a garden and for storage of vehicles, boats, and cut wood and for the placement of various items including a birdbath and feeder and a tree house. He testified as to the clearing and maintaining of paths and trails in this portion of the disputed property and the long use of it since his childhood days.
In support of its position, First Mendon called the prior owner of the parcel, Michael Paul, who testified that sometime in the mid 1980's his father had spoken to Dumas after seeing the Dumas' pool on their (Paul's) land. On cross examination, First Mendon also elicited from Dumas that his immediate neighbor to the north, Riendeau, had used the gravel drive both for egress to Mendon Road and for parking. First Mendon supplemented this with the testimony of Lorraine Provencer, a long time resident of the area, who testified that as far back as the 1950's she recalled vehicles coming in and out of the gravel drive. Additionally, First Mendon pointed out that in the late 1980's Dumas ceased proceedings to take the disputed property by adverse possession when his former attorney died, and thus, abandoned his right to it by this method. Finally, in an attempt to prove its claim for damages, First Mendon called on realtor William Coyle, Jr. who testified as to the rental value of the disputed property since March, 1998. He concluded that since the zoning in this area allows for homes on 10,000 square foot lots, three could have been developed. Using comparable sales from the area he calculated the value of each lot at $25,500, and then by use of a rental factor of 6% concluded the fair market rental value of the disputed property for the 5 year period of First Mendon's ownership to be $22,950.
 ANALYSIS
Of all the manners in which title to real estate can be gained, adverse possession is the most troubling. Why should one who goes onto the property of another wrongfully, for an extended period of time be rewarded with ownership of it? Such a concept is contrary to all other areas of property law, which regards one's ownership of property as the most highly of protected rights. As counsel for First Mendon suggested during the trial, adverse possession while perhaps designed for the mistaken use of another's land, is equally avoidable to the "black hearted trespasser." To counter-balance this principle however, the burden on the claimant is high — clear and convincing evidence, which is defined as strict proof. Carnevale v. Dupee, 783 A.2d 404 (R.I. 2001). Similarly, the statute allowing title to be gained by adverse possession, as well as the case law interpreting it, requires all of the conditions be proven. R.I. G.L., 1956 § 34-7-1, as amended. Certainly every portion of the disputed property would not have to be used to the same degree to comply with the adverse possession statute, but on the other hand, the open, notorious use of one portion of the disputed property does not necessarily mean the entire parcel may be taken. Fortunately, the disputed property in the present matter has been physically demarcated so that the task is somewhat easier.
1. The area immediately behind the Dumas house and to the west of thegravel drive.[2] This area includes the pool, plantings and stone wall in the maintained grass area. Since the 1960's Dumas and his father had a pool there and, in fact, paid taxes on it to the City of Woonsocket. Trees and bushes were planted; walls around the plantings were constructed; the grass was cut and the area maintained. The Dumas family used it in this fashion for over 30 years and did so without interruption.[3] No one else used this area but Dumas. These structures were there for the world to see. And, as Michael Paul testified, his father, the then owner of the disputed property did in fact see them.[4] This conduct is exactly what our Supreme Court set forth in Tavares id "open, visible acts or declarations accompanied by the use of the property in an objectively observable manner that is inconsistent with the rights of the record owner."
2. The gravel driveway and parking area.[5] East of, and adjacent to the first area is the gravel drive and parking area. It runs parallel to Mendon Road behind the Dumas house as well as the Begin house to the south and the Riendeau house to the north. There is no question that since they bought the property the Dumas family has continuously maintained and used this area. They parked cars there; they used it to get to Mendon Road and they maintained it. They did not however, use it exclusively. Gammons v. Caswell, 447 A.2d 361 (1982). From the testimony of Dumas himself, it is apparent that others used the drive as well.[6]
Neighbors to the north, Riendeau and to the south Begin used it[7] to avoid backing out onto Mendon Road as well as to park off street. Photographs introduced by Dumas actually show neighbor's vehicles parked on it. This is significant use by others of the gravel drive and it prevents Dumas from proving by strict evidence that he used the drive exclusively.
3. The wooded area and trails. Adjacent to and east of the gravel drive is the third portion of the disputed property. Unlike the first two sections, here the uses are less obvious. Some uses are for less than ten years such as the tree house, bird feeder and birdbath, and a stored boat. Others are less likely to be noticed such as randomly parked vehicles, a garden and horseshoe area, as well as areas described as trails. These uses are casual. In fact, the photographs introduced would suggest the trails were created mainly by the raking of leaves to give the impression they were well defined. This is hardly the open, notorious use needed to take another's land. Nor was the use of the trails exclusive. From both Dumas as well as Michael Paul, it is apparent that other children, without permission, had significantly used the trails on the disputed property as well as outside the area. Gammons, id.
First Mendon contends that since Dumas did not follow through with his original claim for adverse possession in 1988, he has abandoned it and cannot now reassert it. While there may be affirmative acts that could bar a claimant from seeking title by adverse possession, nothing presented would suggest that Dumas' conduct reached that level. Any prior discussions of adverse possession were stilled first by the apparent victory of the neighbors in defeating a zoning proposal, and then by the death of Dumas' attorney. Dumas should not be penalized from now going forward because of these events.
Turning to First Mendon's claim of trespass at least on those portions of the disputed property not taken by adverse possession, there is no doubt it has met its burden. Liability for trespass to property requires an invasion of one person's property by another who has no right or privilege to enter. Wilson Auto Enterprises, Inc. v. Mobil Oil Corp., 778 F. Supp.. 101 (D.R.I. 1991). From the agreed statement of facts as well as the testimony of almost all the witnesses, it is obvious that Dumas entered and used the land of First Mendon without permission since March 11, 1998.
Dumas submits that damages for trespass are limited to either those set out by statute (none of which are applicable to this case), or only nominal damages.[8] On its part First Mendon asserts that while Rhode Island does not specifically address the issue, authority from other jurisdictions allow for a determination of damages based on the common law principle "that reasonable rental value is the appropriate remedy for trespass." Hammond v. Madera, 859 A.2d 797 (1988). First Mendon's position is more convincing. While nominal damages would be appropriate if no evidence of damages were introduced, proven loss of rental income from the wrongly used property should be awarded. Here the uncontradicted testimony of First Mendon's expert, Coyle, set forth his standards for determining the rental value of the disputed property. His documented testimony which considered land uses, zoning, and comparable sales, and then explained the method of determining rental values, was instructive and persuasive. Obviously it must be adjusted to reflect only those portions of the disputed property not taken by adverse possession.
 FINDINGS OF FACT AND CONCLUSIONS OF LAW
Accordingly, after careful review of all the evidence introduced, the testimony of the witnesses and memoranda submitted by the attorneys, the Court makes the following findings of fact and conclusions of law.
1. First Mendon has been the record owner of approximately 7.20 acres defined as Assessor's Plat 51, Lot 1 in Woonsocket, Rhode Island since March 11, 1998.
2. Dumas has been the record owner of approximately 6,109 square feet of property designated as Assessor's Plat 51, Lot 10 in Woonsocket, Rhode Island since August 26, 1986.
3. Dumas purchased this land from his father who had owned it since the 1960's.
4. Dumas has occupied a portion of First Mendon's property for more than 10 years.
5. The boundaries of the disputed property as set forth in Exhibits 1 and 1A (The Nyberg Site Plan) are a portion of Plat 51, Lot 1 and contain approximately 34,413 square feet.
6. Dumas used the disputed property without the permission of First Mendon from March 11, 1998, and never had permission to use it from any prior owners.
7. Dumas did not abandon his right to seek title to the land by adverse possession when he did not go forward with an earlier claim for it.
8. The area behind Dumas' house and west of the "gravel driveway and parking area" has been used by Dumas in accordance with all aspects of R.I.G.L. § 34-7-1, 1956, as amended, for in excess of the 10 year statutory period. Dumas has proven by clear and convincing evidence that he is entitled to this portion of the disputed property. Title of Dumas to this portion of the disputed property may be quieted and established free from any claims of First Mendon, and all persons unknown and unascertained and those claiming by, through or under them, whether as heirs at law, next of kin, devisees, executors, administrators, assigns or otherwise.
9. The area designated as "the gravel driveway and parking area" to the east of the land referred to in finding 8 has not been used by Dumas exclusively, and as such he has not met his burden of clear and convincing evidence to entitle him to this portion of the disputed area.
10. Dumas has not used the area to the east of "the gravel driveway and parking area" (the wooded area) openly, notoriously or exclusively, nor have some of the uses been for the statutory ten year period. Hence, Dumas has failed to meet his burden of proving his right to this portion of the disputed area by clear and convincing evidence.
11. Conversely, First Mendon has proven by a preponderance of the evidence that Dumas is a trespasser on all portions of the disputed area except the area to the west of the "gravel driveway and parking area" set forth in finding 8 above.
12. Dumas is ordered to remove himself and all his property of whatsoever kind and nature from that portion of the disputed property set forth in finding 11.
13. Damages for trespass should be based on the fair rental value of the property.
14. The testimony of First Mendon's real estate expert William E. Coyle, Jr. was credible and persuasive.
15. Dumas offered no expert testimony to rebut Coyle's testimony.
16. The reasonable rental value of the property that Dumas trespassed on since March 11, 1998 is $22,950. This is based on there being at least 30,000 square feet (3 house lots) exclusive of the land taken by adverse possession in finding 8. In the event that, after a survey of the area taken by adverse possession, the remaining area on which Dumas trespassed is less than 30,000 square feet then the rental value shall be based on 2 house lots, or a total value of $15,300.
17. The area taken by adverse possession by Dumas as set forth in finding 8 shall be:
 Starting at point 117°39'22" of the Nyberg Site Plan at the northwest corner of the disputed property running east to the westerly side of the "gravel driveway and parking area" then south to the point marked 277°59'19" then west to the point marked 67°12'57" a distance of 56.95' then north a distance of 79.30' to the point of beginning.
18. Dumas shall be responsible for the surveying of this portion of the disputed property and all expenses related thereto.
Counsel shall prepare an Order for entry in accordance with this Decision.
[1] In fact there have been three pools, but all have been located in the same place as they replaced older ones.
[2] Because there is no testimony that this part of the drive was used by others, the Court treats the area marked "gravel driveway" between the pool and lawn area with lettering running in an east-west direction, as part of this area and not part of the area referred to as "gravel driveway and parking area."
[3] When one looks at the map of the lots along Mendon Road, and the proximity of the houses to the rear line, it is understandable how an owner could have spilled over into the disputed area.
[4] While the testimony was clear that both Michael and his father saw the pool on their property, there is nothing but speculation to suggest the father gave permission to Dumas to keep it there.
[5] This area is marked on the map as "gravel driveway and parking area" with lettering running in a north-south direction.
[6] "Yes, it's a courtesy thing. I maintain it. I snow plow it, whatever else has to be done. I maintain the back so everybody can useit." P. 18 of transcript of Dumas being referred to his deposition.
[7] Testimony of Michael Paul.
[8] During the trial the Court heard the testimony of real estate expert, William Coyle, Jr. as to the damages in the event Dumas was found to be a trespasser. The Court did so over the objection of Dumas, allowing both sides to brief the issue as to the measure of damages. After considering these memoranda, the Court overrules the objection and allows Coyle's testimony to stand.